Foran, J.
Heard on motion for new trial.
This is an action for personal injury, the defendants being sued jointly. The plaintiff, returning from a hospital, was being conveyed in an invalid carriage owned and operated by the *482 defendant, Daniel H. Rosenstein, easterly on Linwood avenue in the city of Cleveland and while being so conveyed the invalid carriage collided with one of the defendant railway company’s cars going southerly on East 66th street at the intersection where East 66th street crosses Linwood avenue.
As each of the defendants owed the plaintiff a common duty to exercise ordinary care in crossing through this intersection, the defendants were properly joined as joint tortfeasors.
The jury returned the following verdict:
“We, the jury in this case, being duly impaneled and sworn, upon the concurrence of the undersigned jurors, being not less than three-fourths of the whole number thereof, do find for the plaintiff and assess her damages at $8,141.75 against the defendant, Daniel IT. Rosenstein, and we further find for the defendant, The Cleveland Railway Company, to be assessed 18 per cent, of the above amount.”
• Whereupon the court- further instructed the jury as follows:
“Gentlemen, this verdict can not be received, for the reason that you have no right to apportion the damages between the defendants. I have already instructed you that the plaintiff could sue both defendants jointly and if you find both liable, then your verdict should be in favor of the plaintiff and against both defendants, as the plaintiff has a right to collect the whole of whatever damages you award from both or from either of the defendants- if both are liable. You may return a verdict, as I have already instructed you, against both defendants or in favor of both defendants or against one of the defendants and for the other defendant. If you find, under the instructions already given you, that both of the defendants are liable, you must so say by your verdict. However, if you find one of the defendants liable and the other not liable, you may then find against the defendant you find to be liable, and in favor of the other defendant. Whatever you find against both of the defendants, that is, if you find both of them are liable, under the instructions of the court, you can not apportion the damages between them, but must find them liable jointly. You may return to your jury room and deliberate further and return a verdict in conformity to these instructions and the general instructions already given to you at the close of the argument of counsel. ’ ’
*483 The jury retired and after further deliberation, returned the following verdict:
“We, the jury in this case, being duly impaneled and sworn, upon the concurrence of the undersigned jurors, being not less than three-fourths of the whole number thereof, do find for the plaintiff and assess her damages at $8,141.75 against the defendant, D. H. Rosenstein; and we further find for the defendant, the Cleveland Railway Company.”
Both verdicts were signed by all of the jurors.
The defendant, Rosenstein, -has filed a motion for a new trial, now, assigning several reasons why the motion should be granted, among which are “That the court erred in refusing to accept the verdict as rendered ,by the jury and signed by the jury and returned by them in open court and entering judgment thereon. That the court erred in instructing the jury in the absence of csunsel for this defendant and without notifying this defendant after the jury had returned its verdict herein.”
Plaintiff has filed two motions, one for a new trial in which several grounds are alleged why the motion should be granted, and also a motion “To enter judgment in the sum of $8,141.75 against said defendants, the Cleveland Railway Company ¡and Daniel H. Rosenstein, in accordance with the verdict of the jury as returned herein.”
In the motion for a new trial filed by the plaintiff, it is alleged that the verdict is contrary to the evidence and should have been in favor of the plaintiff and against the railway company.
The testimony of the plaintiff as to the negligence of the defendant railway company, at the time the plaintiff rested her ease, was sufficient to submit the question of the defendant’s negligence to the jury, yet the testimony of the railway company strongly tended to prove that it was not negligent in the premises and this evidence, as disclosed by the record, was ele; rly of sufficient probative value and force to enable any intelligent jury to draw a rational conclusion therefrom in support of the railway company’s contention that it was not negligent, and this being true, the verdict in favor of the railway *484 company can not be disturbed, as the court can not say that this verdict was manifestly or clearly against the weight of the evidence, the rule being that where the evidence is of such a character that different minds may come to a different conclusion, the verdict will not be disturbed. Or, in other words, the trial court will not disturb a verdict where there is substantial and conflicting evidence before the jury, as the jury is to say which party is to be believed. ' Or it may be said that where the facts are such that a reasonable man might have come to the conclusion at which the jury arrives, a verdict will not be disturbed. Hence the motion to enter judgment for the plaintiff against the defendant railway company, notwithstanding the verdict, as well as the motion of the plaintiff and the defendant Rosenstein that the verdict in favor of the railway company is against the weight of the evidence, will be overruled.
We find no error in the other grounds alleged in either motion for a new trial; nor do we find that the grounds raised by various allegations in these motions are of sufficient force to justify any extended observations by the court.
There remains then the single question, did the court err in instructing the jury, after the verdict had been returned, as it did, and should the first verdict stand as the verdict of the jury?
The rule is well settled and undoubtedly is, that where damage is caused by the joint or concurrent wrongful acts’ of two or more persons, they may be prosecuted therefor jointly or severally. Tills doctrine is supported by numerous authorities in this state, and is so well settled that it is hardly necessary to refer to these authorities at length. See Transfer Company v. Kelly, 36 Ohio St., 86; Pennsylvania Oil Co. v. Snyder, 55 Ohio St., 342.
The question of the joint negligence of these two defendants was squarely raised in the petition; and as has already been said, the accident having occurred at an intersection of two thoroughfares, upon one of which the defendant, railway company, operated a double track system, and upon the other thoroughfare the defendant Rosenstein was driving and operat *485 ing an invalid carriage in which the plaintiff, an invalid, was riding upon a.couch, therefore both defendants owed to the-plaintiff the common duty to exercise ordinary, care in passing through this intersection. And if the defendant Rosenstein was a common carrier, he owed to her a higher degree of care. The plaintiff was entitled to a joint verdict against both defendants if the jury found both were liable, although she might, upon execution, collect her judgment, or make it, against either or both of them.
Counsel for the defendant Rosenstein cites several authorities in support of his contention. First, the case of Claiborne v. Tanner, 18 Tex., 68, in which it is held, in the syllabus that —
“Where a jury has intervened, and all the issues have been submitted to their decision, their verdict must constitute the basis of a judgment. The court can not look to the evidence on which the verdict was found, in order to determine what judgment to render, but must look alone to the verdict. ’’
With the doctrine that the court can not look to the evidence on which the verdict was found, we are in full accord. There is no doubt as to this proposition. But with the doctrine that the court “must look alone to the verdict,” we are constrained to say that that is not the rule or the law in the state of Ohio. It perhaps was ,the rule or the law while the rules of common law relating to juries and verdicts prevailed exclusively in this state.
The case of Lloyd v. Brinck, 35 Tex., 1, is not in point. In that ease it was held in the syllabus that—
“When a jury renders a verdict in proper form, and responsive to the issues presented by the pleadings and submitted to them by the court, no discretionary power is vested in the court to set that verdict aside upon its own motion, notwithstanding the verdict may be against the weight of the evidence, or in disregard of the instructions of the court.”
i
The verdict now under consideration can not be said to be either in proper form or responsive to the issues presented by the pleadings. In this case the court below received the verdict, *486 but immediately, of its own motion, set it aside and granted a new trial. It will be conceded the court had no power to do this, either under common law rules or under code statutes. Both these cases were decided nearly 50 years ago; the first as early as 1858.
State V. Beall, 48 Neb., 817, is also cited. This was an action for money, in which the defendant filed a counter-claim. The jujt’y in its verdict say: “That there is nothing due either plaintiff or defendant, and the said plaintiff and defendant are entitled to bear proportionately the costs of this action.” This verdict the court refused to receive, and refused to send the jury back to correct the verdict and summarily discharged the jury. The action in mandamus was brought on relation of the state, asking for an order requiring the clerk to enter the verdict on the record of the court. This the court refused to grant. The Supreme Court, page 819, say that—
“Although the subject is not wholly free from doubt, the inference we draw from the record is that the verdict was by the respondent held to be insufficient in form' and in substance to sustain a judgment for either party; but in that conclusion of the learned district judge we are unable to concur. The rule appears to be that a verdict which responds to all of the issues submitted should not be rejected on account of immaterial findings or recommendations superadded by the jury. In the verdict here set out there is a distinct and explicit finding with respect to the cause of action alleged by each party, and the attempted apportionment of the costs may be rejected as surplusage. ’ ’
It will be noted here that the court held that where a verdict is returned which is sufficient in form and responsive to the issues made by the pleadings, it is the duty of the court to receive and enter it of record. It can not be said that in the case at bar the first verdict is sufficient in form or that it is responsive to the issues made by the pleadings. The rule here laid down is in conformity with Hancock v. Buckley, 18 Mo. App., 459. In this case, being an action for money, the verdict was as follows:
*487 “We, the jury, find for the plaintiff 125 40-100 dollars, dividing the entire costs equally between the parties.”
Paragraph 2 of the syllabus reads as follows:
“Where the verdict of a jury finds on the issues, and also superadds something not submitted to them (as for instance, dividing the costs), the verdict is good, notwithstanding the addition of matters not in issue, which last is merely void and will be disregarded as surplusage.”
To the same effect is the doctrine in State v. Knight, 46 Mo., 83.
Under favor of the doctrine in these cases, it must be held that the first verdict returned in the case at bar was a verdict for the plaintiff against the defendant, D. H. Rosenstein, and that the superadded portions of the verdict undertaking to assess 18 per cent of the amount against the defendant railway company, will have to be treated as mere surplusage. In the first verdict the jury say:
“We, * *) do find for the plaintiff and assess :her damages at $8,141.75 against the defendant D. IT. Rosenstein, and we further find for the defendant, the Cleveland Railway Company, to be assessed 18 per cent, of the above amount.”
There is a clear intendment to find against the defendant D. H. Rosenstein, and the word “We further find for the defendant, the Cleveland Railway Company,” if the word “company” was followed by a period, would make a complete verdict in favor of the plaintiff against the defendant Rosenstein. But even taking the language of the verdict as ending with the word “Rosenstein,” it may be fairly said that the verdict is complete, and that the balance or the superadded language is mere surplusage and should be stricken out.
The case of Fries v. Mack, 33 Ohio St., 52, is also cited as an authority by both the plaintiff and the defendant Rosenstein. This is an action for money, brought in the Superior Court of Cincinnati, Ohio, the action being predicated upon a transcript of a judgment purporting to have been rendered in the state *488 of Kansas. The defendant, in his second defense, among other things, alleged that the cause of action set forth in the plaintiff’s petition, for which relief is demanded, did not accrue within ten years prior to the commencement of the action, and he therefore asks to be dismissed with his costs. The plaintiff demurred to this second defense, on the ground that the same was not sufficient in law, and the court sustained the demurrer, permitting the issue to be tried as made by the first defense, which was that the judgment sued upon by the plaintiff had been assigned to him, and a denial that the plaintiff had iany interest in said judgment. The jury returned the following verdict:
“We the jury do find for the plaintiff the amount $7,000.00 and interest from the date of maturity of the seven notes of $1,000.00 each, given February 2, 1860, up to March 2, 1874.”
It will be here seen that the verdict was in no respect responsive to the -issues made in the pleadings; and the court say, in the third paragraph of the syllabus:
“In an action for recovery of money, if 'the verdict finds for the plaintiff but its language is such that, when read in connection with the record, the amount assessed for the plaintiff can not be ascertained without reference to the evidence offered on the trial, no judgment can properly be entered on such uncertain verdict.”
This is undoubtedly good law, but I can not understand how it applies to the case now before the court.
In the opinion the Supreme Court, quoting the maxim, “Id certum est, quod certu-m redi potest,” say on page 60:
“A verdict in favor of the plaintiff for the amount of the note in suit, with interest from its maturity, would be certain because it could be made certain in amount by any competent accountant.”
But further along in the opinion on the same page the court say:
“But the action was not brought upon promissory notes, nor were any such notes referred to in the pleadings, and the *489 verdict neither gives copies of them nor states the times at which they were respectively payable.”
In other words, the verdict was not responsive to the issues made in the pleadings.
The trial court entered judgment upon the verdict of the jury. This the Supreme Court said was error, ,and that it was not within the province of the court to identify the notes referred to by the jury or ascertain the times when they severally matured by reference to the evidence offered on the trial. The court further say, page 61:
“The facts found by the court (trial court) form no part of the record, and were found only from the memory or minutes of the judge who tried the case. Without a knowledge of these facts, no one could state from the verdict, considered per se, or in connection with the record, from what time the jury intended the computation of interest to be made.
“The court found, from facts outside of the record, that the jury intended by their verdict to refer to certain notes,”
This the Supreme Court held the trial court had no authority to do.
It must be borne in mind, as has been already intimated, that all of these decisions are practically predicated upon the common law doctrine or rules relating to verdicts of juries and the control over such verdicts by the trial court, or the authority of the trial court to modify or change such verdicts. These ancient, iron chested, steel ribbed rules of the common law with respect to verdicts and the duty of the courts with respect to receiving verdicts have been greatly modified in modern times. It is well known to members of the bar that formerly, or in ancient times, jurors were not permitted to separate until their verdict was returned into court; and if necessary to compel them to agree, they were sometimes deprived of the necessaries of life for the time being. And it sometimes happened that a recalcitrant jury which failed to agree was packed upon an ox cart by the trial court and taken from one assize or jurisdiction to another and kept by the court until the jury did agree. But *490 as Hitchcock, Judge, said in Sutliff v. Gilbert, 8 Ohio 405, 409— “These rigid rules have been much relaxed in the practice of this state.” In this case it appears that the jurors returned a sealed verdict, the court not being in session at the time the agreement was reached, and returned the following day when the verdict was tendered. The verdict as tendered was as follows:
“It is the opinion of the jury that the plaintiff shall recover the amount that was made out of the goods at sheriff’s sale, with interest from the date of the levy; the jury are unable to find any document among the papers delivered to them by the coui’t or the parties whereby they can ascertain the exact sum, therefore they are compelled to give their verdict in this indifferent manner. ’ ’
The court instructed the jury, after this verdict had been tendered, to retire again and find some amount of damages against the defendants. This the defendants claim was error, and error was prosecuted to the Supreme Court, one of the grounds of error being that the jury should not have been permitted to separate, and that it was error prejudicial to the defendants to have permitted them to separate. This was found no ground of error by the Supreme Court. Hitchcock, J., in the opinion, page 409, says:
“When the jury return a general verdict settling the rights of the parties, and upon which a judgment can be entered, or where they return a special verdict, finding the facts of a case and leaving the questions of law arising upon those facts to the court, it would be improper for the court to send them out again for further consideration. If such verdict was against law or evidence, the only relief against its effects would be on a motion for a new trial. But where the jury hav-e decided the issue between the parties, but have failed to return a complete verdict, as, for instance, where, in an action on a promissory note, they have found for the plaintiff the amount of the note with interest, but have not specified in dollars and cents that amount, they may, with propriety, be returned to their room to make the computation of interest.”
Before the adoption of the civil code in Ohio, which was adopted in March, 1853 (51 O. L., 57), and went into effect in *491 July of the same year, there were not in Ohio any statutory provisions relating to the reception of verdicts and the power of the court over verdicts. By Section 273 of the code, as adopted in 1853, it was provided that either party may require the jury to be polled after their names have been called by the clerk, and if one answers in the negative, the jury must be again sent out for further deliberations. And by Section 274 it was further provided that, ‘ ‘ If, however, the verdict be defective, in form only, the same may, with the assent -of the jury, before their discharge, be corrected by the court.” These two sections remained in force until 1880. By virtue of an act passed by the Legislature in March, 1875, a codifying commission was appointed by the Governor, which commission reported September 15, 1879, and the following Legislature adopted the report of the commission; and in the Revised Statutes of 1880 the sections of -the civil code above referred to appear as modified or enlarged by the codifying commission in its report as adopted by the Legislature and were known as Sections 5189 and 5199, Revised Statutes. Section 5199, as so adopted, reads:
“If no disagreement be expressed and neither party requires the jury to be polled, or on the polling each juror answer affirmatively, the verdict is complete and the jury shall be discharged from the case. But when the verdict is defective in form only, with the assent of the jurors and before their discharge, the court may correct it.”
And in Section 5189, Revised Statutes, it is provided if a juror disagree, or if when the jury is polled, .a juror answer in the negative, or if the verdict is defective in matter of substance, the jury must be sent out again for further deliberation, and either party may require the jury to be polled, which shall be done by the clerk or court asking each juror if it is his verdict.
It will be seen that in this latter section — -“If the verdict is defective in matter of substance, the jury must be sent out again for further deliberations” — an entirely new provision of law was adopted in relation to verdicts and their reception by the court and the duty of courts with respect to these verdicts in certain instances, that is, if the verdict is defective in matter of *492 substance. This language was subsequently modified by the codifying commission whose report was adopted by the Legislature and enacted by the 78th General Assembly on January 31, 1910. In Section 5198, Revised Statutes (Section 11456, G. C.), the language was changed to read as follows: “If the verdict in substance is defective, the jury must be sent out again for further deliberation. ’ ’
We have examined all the authorities or Ohio decisions cited, as well as those not cited by counsel, and we find that Section 11458, General Code, which provides that, “If, on polling the jury, a juror answers in the negative, or if the verdict in substance is defective, the jury must be sent out again for further deliberations,” has not been under consideration by the courts so as to require interpretation by authorities of the words “if the verdict in substance is defective.”
The other section of the General Code has been frequently under consideration .and has received frequent interpretation. Where there are clerical or grammatical errors in the verdict, or in cases where the plaintiff is entitled to interest and the jury finds for the plaintiff “with interest” from a certain date^ it has been held generally that the verdict is defective in form.
It is quite evident that Section 274 of the civil code as enacted in 1853 was largely confirmatory of judicial determination or decision then existing, so far as the right of the trial court to require the jury to deliberate further when the verdict returned was defective in form. Undoubtedly the right to poll the jury, especially in criminal eases, is very ancient, and the incorporation of this right in the code or statute was merely declaratory of the common law rule and the rule based on judicial precedent. The amendment of the codifying commission relating to verdicts defective in substance, as found in the Revised Statutes of 1880, was an enlargement of these rules and intended to clarify the doctrine of previous judicial determinations.
In the case of Sutliff v. Gilbert, supra, it was said in the opinion, as has been already stated; ‘ ‘ If such verdict was against law or evidence, the only relief against its effects would be on a motion for a new trial. But where the jury have decided the *493 issue between tbe parties, but have failed to- return a complete verdict, * * * they may with propriety be returned to their room to make the computation of interest,” in cases where the interest has not been computed by the jury and added to the verdict or the amount due.
A verdict may be said to be defective in form when the language or expression used is imperfect or wanting to correctly express the real intention of the jury, and may be corrected by the jury or by the court with the consent of the jury when or in cases where it can be done without affecting the issues raised by the pleadings or presented by the evidence. A verdict is defective in substance if it is wanting in some real or essential part or element and does not correspond to the issues raised by the pleadings; and the language “defective in substance” may be said to be opposed to or opposite to form or defective in form. If, for instance, a man sues upon a promissory note upon which interest is due for one or more years, and the jury find for the plaintiff, or find that the plaintiff is entitled to recover the full amount of the face of the note, but no reference is made to the interest, the verdict is defective in substance; for if the plaintiff was entitled to recover on the note, he was entitled to the interest, and the verdict was wanting or lacking in an important essential, and therefore defective in substance.
A painting, a photograph or a drawing is indicative of the form of the thing represented, but not of its substance.
A verdict is contrary to law when it is contrary to the principles of law applicable to the facts which were submitted to the jury and which the jury wer'e to try and determine. Basseker v. Cramer, 18 Ind., 45; Candy v. Hanmore, 76 Ind., 125. Or a verdict is against the law if it is in disobedience to the instructions of the court upon a point of law. Declez v. Save, 71 Cal., 552, 553. Obviously a verdict that is against the weight of the evidence is against or contrary to law. In general, a verdict may be said to be contrary to law where the party prevailing should not have recovered upon the law or the facts, or where the party failing has been materially prejudiced *494 by the instructions of the court or its rulings upon the admissibility or rejection of evidence. If the verdict is contrary to law, the court has no power, under the rules of the common law or by favor of judicial decision or by virtue of the code provisions, to interfere with it or direct the jury to deliberate further, as the only way to correct such defect or wrong is by, granting a motion for new trial. This is well settled, and no further authorities need be cited in support of the proposition.
The distinction between a verdict defective in form or substance and a verdict contrary to law is clear and obvious. If the verdict is merely not responsive to the issues clearly raised by the pleadings, it may be defective either in form or in substance. If, in determining whether a verdict is contrary to law or defective in form or substance, recourse must be had to the record and the evidence, then it is contrary to law. Sutliff v. Gilbert, supra, and other authorities already cited.
In the ease at bar the joint and several liability of the defendants was clearly raised by the pleadings. The first verdict, returned must be said to be defective in substance, as it is wanting in an important essential, as the jury did not find in clear unmistakable language that both defendants are liable, as the issues presented by the pleadings obviously require. If it is admitted that the language used by the jury indicates an intention to find against both defendants, the verdict can not be said to be contrary to law simply because the jury had no legal authority to apportion the damages, and for the reason that it was necessary to search the record to determine the question of liability, and as the verdict -is not responsive to the issues raised by the pleadings, it is therefore defective in substance; but if it can be said from the language used that the verdict is against the defendant Rosenstein' alone, then the attempt of the jury to assess a portion of the damages against the defendant railway company renders it defective in substance and perhaps in form, and the latter part of the verdict can be treated as mere surplusage. It is quite evident the jury did not follow the form of verdict prepared by the clerk under the directions of the court. Suppose the jury had returned a verdict against *495 one of the defendants without indicating they found in favor of the other defendant, would the verdict not be defective in substance as being incomplete and as lacking or wanting in an essential matter? If such had been the finding or verdict returned,' it would not be seriously claimed that the court had no power, under Section 11456, General Code, to require, by further instruction, the jury to return a complete verdict. I can see no escape from the conclusions reached, that the verdict as returned was incomplete and defective in form and substance, and that there was no error by the court in instructing the jury as it did and in sending the jury out for further deliberation.
That the jury believed the defendant railway company not liable is fully shown and indicated by both verdicts. If the jury believed there was some negligence by the railway company, it is quite certain they believed or found the defendant Rosenstein was five and a half times more negligent in causing the plaintiff’s injuries than the railway company. If this was the finding or conclusion of the jury, it is manifestly apparent that the negligence of the railway company was so attenuated .as to reach the vanishing point, and so remote that it can not be said to have been a proximate cause of plaintiff’s injuries. This becomes more clearly .apparent by the refusal of the jury in the second verdict to find the defendant railway company liable when it understood that the whole amount of the damages could be collected from either of the defendants if both were found liable. We can not escape the conclusion that the verdict was a compromise or ,an effort to reach a unanimous agreement by composing some differences of opinion that evidently arose during the deliberations of the jury.
The claim of the plaintiff and the defendant Rosenstein that the court erred in not sending for counsel before it sent the jury out for further deliberations is not well taken. In ancient times, even in Ohio, a practice prevailed, when a jury required further instruction, to call counsel at the court house door in a loud voice. Of course, this was a mere matter of form, as nobody expected that counsel half a mile away would hear the call.
*496 That a trial court can reinstruct the jury in the absence of parties or counsel in a civil case upon questions of law, is well settled. Seagrave v. Hall, 10 C. C., 395.
It is error for the court to reinstruct the jury, in the absence of parties or counsel, upon matters of fact, unless oppbrtunity is given to be present. Seagrave v. Hall, supra; Chambers v. Ohio Life Ins. Co., 1 Disn., 327.
This is indeed a matter provided for by the code. Section 13452, General Code, provides'that, after the jurors retire to de-. liberate, if they disagree .as to the testimony or desire to be further informed on the law, they may request the bailiff to direct them to the court, "which shall give the opinion sought on matters of law, and also, in the presence of or after notice to the parties or their counsel, may state its recollection of the testimony upon a disputed point.”
In the case at bar the court, when he reinstructed the jury, did not give the jury any instructions as to matters of fact. The only new instruction given was that the jury had no right to apportion the damages if they found against both defendants. The balance of the instruction was simply a reiteration of the former instructions of the court.
In Powers v. Boehme, 17 C.C.(N.S.), 37 (38 O. C. C., 489), our own circuit court said in the syllabus:
"It is not prejudicial error to recall the jury ,and emphasize certain portions of the charge previously given if the circumstances of the trial warrant it.”
The circumstances under which the jury was recalled in this case are not shown, or were not shown by the record; but we think it is well settled, so well settled that no authorities need be cited, that where the court reinstruets the jury for any reason, upon a question of law, it is not error if the parties or counsel are not called or are not present.
In the ease of Campbell v. Beckett, 8 Ohio St., 211, it is held in the syllabus:
"It is error for a judge, during a recess of his court, in the absence of the party and his counsel, without notice to them, to *497 give instructions to the jury to whom the case has been submitted.”
This ease was decided during the December term, 1857, when the civil code of 1853 was in effect. The provisions of this code, Section 266, provided, in paragraph five of that section, that “when the evidence is concluded, either party may request instructions to the jury on points of law, which shall be given or refused by the court.”
By paragraph seven of this section it is provided, ‘ ‘ The court may again charge the jury after the argument is concluded.”
It will be here seen that under the practice of the civil code as it existed at that time, either party had the right to demand instructions on points of law, but it was left optional with the court whether any further instructions should be given after the argument had closed or was concluded.
In the ease just cited, Campbell v. Beckett, supra, it appears that “no instruction being ashed by either party, the court Ordered the jury to tahe the case and return such verdict as justice required, without giving any instructions. “Afterward the jury requested that the court explain to them a point of law, which the court did in the presence of counsel. Next morning, during a recess of the court, the jury again requested further instructions, which were given in the absence of counsel or the parties.
The practice and the law as it then stood is not the practice or the law at present, nor has it been the practice or the law for many years. The section of the civil code just quoted was amended- — -whether by the Legislature or by the codifying commission is immaterial — and the seventh paragraph of Section 11447, General Code, now provides:
“The court, after argument is concluded, before proceeding with other business, shall charge the jury. Any charge shall be reduced to writing by the court if either party, before argument to the jury is commenced, request it.”
When the case of Campbell v. Beckett, supra, was decided, Section 270 of the original code was then in effect and read as follows:
*498 “After the jury have retired for deliberations, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the ease, they may request the officer to conduct them to the court, where the information upon the point of law shall be given, and the court may give its recollection as to the testimony upon the point in dispute, in the presence of or after notice to the parties or their counsel.”
This section now appears in the General Code as Section 11452, and reads as follows:
“After the jurors retire to deliberate, if they disagree as to the testimony or desire to be further informed on the law of the case, they may request the officer in charge to conduct them to the court, which shall give the information .sought upon matters of law, and also, in the presence of or after notice to the parties or their counsel, may state its recollection of the testimony upon a disputed point.”
It will be here noticed that the section of the code now in effect differs very materially from the section of the code which was in effect when Campbell v. Beckett, supra, was decided. Under the section of the General Code as it now stands (Section 11452), it is clear that the court may give or shall give any information sought by the jury upon matters of law. After the word “law” then appears these words: “And also, in the presence or or after notice to the parties or their counsel, may state its recollection of the testimony upon a disputed point.” In other words, this section of the code provides that the court may give the jury any information they seek upon matters of law in the absence of parties or their counsel. But if the court desires to state its recollection of'the testimony upon a disputed point, then it is necessary to give notice to the parties or their counsel, unless counsel are present at the time; and this has been the holding under this section by all the courts since its adoption; as, for instance, it was held in the case of Emery v. Whitaker, 2 C. S. C., 36, decided in March, 1869, after the rule of practice had changed, that — ■
“When the jury come out and ask instructions of the court, it is not error to give them further instructions of law, correct *499 in themselves, in the absence of counsel, though no call of counsel at the court house door is made.”
We think it clear that no error was committed in the respect claimed by counsel.
The motions of the defendant Rosenstein and the plaintiff are overruled so far as the defendant railway company is concerned.
The question raised by counsel for the defendant Rosenstein in the motion for new trial, that the verdict is excessive, is reserved for further consideration.