**De BOER et al., Appellees,**

**v.**

**TOLEDO SOCCER PARTNERS, INC. et al., Appellants.**

[Cite as *De Boer v. Toledo Soccer Partners, Inc.* (1989), 65 Ohio App.3d 251.]

Court of Appeals of Ohio,
Lucas County.

No. L–88–227.

Decided Nov. 9, 1989.

*Jeffrey Lydy,* for appellees.

*William Maloney,* for appellants.

---

HANDWORK, Presiding Judge.

This matter is before the court on appeal from the June 28, 1988 judgment of the Lucas County Court of Common Pleas.

In 1986, appellants, Edward W. Cochran, John Glase, Joshua Gottlieb, Frank DeJulius, and Robert Ransom, formed Toledo Soccer Partners, Inc., which owned and operated a soccer team. Each appellant was a twenty-percent shareholder in the corporation, and Cochran served as the "managing partner." Appellee, Klaas De Boer, was hired to serve as the manager and coach of the team. Under a written contract, Mr. De Boer was to paid $25,000 for the first season of ten months, a $2,000 bonus for making playoffs, medical coverage, and a moving allowance of $300 per month for ten months. The contract was to be renewed for an additional ten months with his salary to increase to $30,000 for the season, with a $2,000 bonus for making playoffs. The shareholders all personally guaranteed the contract. The interpretation of Mr. De Boer's employment contract is one of the issues raised on appeal.

The soccer season began on October 31, 1986. By December 6, 1986, the team had won only one game. Just before the game was to be played on December 6, 1986, a meeting was held between two shareholders and Mr. De Boer. The shareholders testified that Mr. De Boer quit; but, Mr. De Boer testified that he had been fired. Furthermore, the team's secretary and one of its players also testified that Mr. De Boer had said that he had been fired.

On March 27, 1987, appellees, Klaas De Boer and Pamela De Boer, filed suit against appellants, Toledo Soccer Partners, Inc. and each partner thereof individually, claiming a breach of Mr. De Boer's employment contract. Appellees sought to recover the salary owed Mr. De Boer, medical insurance coverage, the balance of a moving allowance, and bonuses required to be paid under the terms of the contract. Furthermore, appellees sought to recover the cost of seeking new employment due to the alleged breach of the

employment contract. Appellants counterclaim that Mr. De Boer negotiated salaries in excess of the league-imposed limitations and the express limitation of appellants and that Mr. De Boer breached his contractual obligation to properly manage the business operations of the Toledo Pride Soccer Club. The case proceeded to trial and the jury found in favor of appellees with regard to both their claim and appellants' counterclaim. Appellees' post-trial motion for prejudgment interest was denied. Appellants' motion to reduce the amount of the jury award by the amount of unemployment compensation benefits received by Mr. De Boer was granted. Appellants then sought a timely appeal to this court and assert the following three assignments of error:

"First Assignment of Error:

"The lower court erred in its application of the parol evidence rule to the facts of this case.

"Second Assignment of Error:

"The damages awarded by the trial court are excessive and against the manifest weight of the evidence.

"Third Assignment of Error:

"The lower court erred in twice refusing to accept the verdicts rendered by the jury."

In their first assignment of error, appellants contend that it was error for the court to exclude their evidence regarding the agreements and understandings leading up to the execution of the employment contract. Specifically, appellants sought to introduce a draft of the contract with handwritten changes thereon and testimony, both of which related to paragraph seven of the contract which covered the personal guarantee of the shareholders.[1] However, appellants now seek to argue that they were precluded from introducing into evidence parol evidence regarding the renewal provisions of the contract.

We find it is unnecessary to address the issue of whether parol evidence was admissible to contradict or explain the renewal terms of the contract inasmuch as appellants never sought to introduce any such evidence. They were precluded from introducing parol evidence regarding the personal guarantee clause, but that issue is totally separate and distinct from the renewal clause. Furthermore, appellants did not object to appellees' parol evidence regarding the renewal provisions. Therefore, appellants are precluded from

---

1. Cochran testified at trial that this was "the only provision in the contract which we are trying to establish ambiguity on."

raising this issue as error on appeal. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317–318, 436 N.E.2d 1001, 1003.

Wherefore, we find appellants' first assignment of error not well taken.

In their second assignment of error, appellants argue that the damages awarded were against the manifest weight of the evidence. Appellants make three separate arguments under this assignment of error.

■ First, they argue that Mr. De Boer should not be awarded his salary as set forth in the contract for the second season since he did not perform any service for that season. Appellants contend that they were justified to terminate the renewal portion of the contract as a business necessity due to the termination of the team.

Assuming *arguendo* that the employment agreement in this case could be terminated due to business necessity and not constitute a breach of the contract, we find that it was not terminated for this reason. It is clear from the evidence presented that Mr. De Boer was fired because of the poor record of the team at the beginning of the season. Thus, this argument is without merit.

■ Second, appellants argue that it was error for the trial court to award appellee a moving allowance of $300 a month for both seasons. Appellants contend that appellee had no moving expenses after he was fired, or at least after the first season when the team disbanded.

The record discloses that the parties agreed that appellee would not move to Toledo when he accepted the coaching position. Instead, appellee rented an apartment. No evidence was presented, however, as to the lease agreement for the apartment to indicate whether appellee was required to continue to pay for the apartment after he was fired. Therefore, we conclude that there was insufficient evidence to support the jury's finding that appellee incurred these expenses.

■ Third, appellants argue that the court erred by not reducing the damage award by the amount of income earned or which could have been earned during the unexpired term of the employment contract.

Upon a review of the evidence presented in this case, we find Mr. De Boer sought other comparable employment, but was unable to obtain such a position. He did earn some income from the operation of a summer soccer camp for children. However, this camp was operated during the summer break between seasons which the employment contract did not cover. Therefore, the trial court properly refused to deduct this income from the damage award.

Consequently, we find that except for the award for living expenses, the damage award was supported by the evidence. Therefore, we find appellants' second assignment of error not well taken, in part, and well taken, in part.

In their third and final assignment of error, appellants argue that the court erred by twice refusing to accept the jury verdicts. The court believed that the jury thought that a verdict in favor of appellees and against both the corporation and the individual defendants would result in a double recovery for appellees. Therefore, the court explained that a double recovery would not occur and that the individuals who guaranteed the contract would pay only if no recovery was made against the corporation. Appellants contend that the court was thereby resubmitting the issues to the jury to correct substantive defects or internal inconsistencies when it should have ordered a new trial. Appellants cite *Landon v. Holzberger* (1932), 43 Ohio App. 434, 183 N.E. 446, in support of their contention that if the court found that the damage award was in an amount less than what the evidence supported, that it should have ordered a new trial rather than resubmitting the issue to the jury.

This assignment of error presents a unique question under Ohio law: If a court determines from the circumstances surrounding the verdict process and from the face of the verdict itself that the jury might have misunderstood the court's instructions, can it give further clarification instructions and order the jury to return to the jury room to reconsider its decision?

■ Generally, it is accepted that once the jury has rendered its verdict and has been discharged, it cannot be recalled to change the verdict. *Ekleberry v. Sanford* (1943), 73 Ohio App. 571, 574, 29 O.O. 193, 194–195, 57 N.E.2d 270, 271, and *Boyer v. Maloney* (1927), 27 Ohio App. 52, 56–57, 160 N.E. 740, 741. But, see, *Cady–Ivison Shoe Co. v. Chicowicz* (1905), 44 Ohio C.C. 473 (discharged jury permitted to reconvene to alter the verdict to conform to their intention). Before the jury is discharged, however, they should be given great latitude in correcting the verdict. *Ekleberry v. Sanford, supra.* Accord 76 American Jurisprudence 2d (1975) 170–171, Trial, Section 1214.

■ The gray area in Ohio law is whether the court may direct the jury to amend or alter the verdict in substance as well as in form. With regard to special interrogatories, the Supreme Court of Ohio has held that a court may resubmit the questions to the jury ordering them to answer the questions, but it cannot dictate the answers. *Elio v. Akron Transp. Co.* (1947), 147 Ohio St. 363, 34 O.O. 301, 71 N.E.2d 707, paragraph three of the syllabus. In the *Elio* case, the court quotes from a section of Corpus Juris Secundum which states that the jury may be directed to reconsider certain questions where the answers are unresponsive, ambiguous, or indicate a lack of understanding of the question. *Id.* at 371, 34 O.O. at 304–305, 71 N.E.2d at 711. The court was

admonished, however, to be cautious when giving additional instructions to avoid influencing the jury's decision and thereby invading the province of the jury. *Id.* See, generally, 76 American Jurisprudence 2d (1975) 170–171, Trial, Section 1214, and 90 Ohio Jurisprudence 3d (1989) 111–113, Trial, Section 478. However, in an earlier case, the Supreme Court of Ohio held that once a jury renders a verdict determining the rights of the parties or the facts of the case, the court may not direct the jury to further deliberate the issues. If the judgment is contrary to the manifest weight of the law or evidence, a new trial is warranted. *Sutliff v. Gilbert* (1838), 8 Ohio 405, 409–410. The *Sutliff* court did state, however, that the court could order the jury to reconvene to consider the case again if the verdict was incomplete. *Id.* Therefore, in the *Sutliff* case, the jury was ordered to reconsider the calculation of interest because the judgment was incomplete since it merely indicated that interest was to be awarded as of a certain date and not the amount.

The lower Ohio courts often make a distinction between changes in form and in substance. Based upon statutory language addressing the altering of a verdict, some courts found that only changes in form were permissible. See *Lehrer v. Cleveland Ry. Co.* (1918), 28 Ohio Dec. 243 (verdict in negligence action dividing the damages between defendants was not in proper form or responsive to the issues presented and, therefore, the court could direct the jury to reconsider whether each defendant was liable in the full amount of the damages or not liable) and *Landon v. Holzberger, supra* (new trial was necessary where jury assessed damages in an amount less than what the evidence warranted). Even if a change in substance was necessary, however, the courts found that the jury could make such a change if the verdict was ambiguous or needed support to reflect the jury's intentions. See *Wilson v. Marino* (1961), 88 Ohio Law Abs. 316, 22 O.O.2d 22, 182 N.E.2d 635 (jury erroneously included medical expenses in the damage award as costs and was therefore ordered to reconsider the damage award); *Schaller v. Chapman* (1943), 44 Ohio Law Abs. 631, 636, 66 N.E.2d 266, 268–269 (jury ordered to reconsider its decision which ignored the verdict forms and found for plaintiff, but also found each party equally guilty and directed each to assume his own damage); and *Standard Knitting Co. v. VanWie* (1909), 33 Ohio C.D. 562 (court directed jury to correct its verdict where it failed to exclude from the damage award, in a breach of employment agreement case, the earnings from other employment). See, generally, 90 Ohio Jurisprudence 3d (1989) 110–111, Trial, Section 476, and 76 American Jurisprudence 2d (1975) 170–171, Trial, Section 1214. The verdict has also been permitted to be changed by the jury where the verdict reflects the jury's obvious misunderstanding of the jury instructions. *McGoldrick v. Capital Van & Storage Co., Inc.* (Dec. 13, 1984), Cuyahoga App. No. 48278, unreported, 1984 WL 6362 (a jury was directed to

reconsider its verdict granting punitive damages but not compensatory damages where the evidence supported a finding of compensatory damages).

██ From these cases, we conclude that two conflicting factors must be weighed in each case. On the one hand, a jury should be able to conform its verdict to its intention to avoid the necessity of a new trial; but, on the other hand, the court cannot invade the province of the jury by suggesting or implying that the jury came to the wrong conclusion.

██ In this case, the jury first questioned the court regarding forms attached to appellees' income tax return. After the court instructed the jury to ignore these forms, the jury returned to deliberate the case and rendered a verdict. The court reviewed the verdict and then stated in open court that the jury apparently misunderstood his instructions and needed to find for or against both the corporate defendant and the individual defendants on the complaint and then for or against the plaintiffs on the counterclaim. No mention was made as to what the verdict stated. A juror asked the court whether there were three forms to be completed. The court responded in the affirmative, and the jury returned to the jury room to deliberate. Fifteen minutes later, the jury returned with a question which the court discussed in open court noting, however, that it would reveal the status of the jury's deliberations. The court instructed the jury that even if they found that both the corporation and the individual defendants were liable, plaintiffs would only be able to recover the full amount of the loss and not double that amount. The court further explained that the individual defendants were guarantors and would pay only if the corporation did not. The jury retired again to deliberate and returned in five minutes with their verdict. The jury found in favor of plaintiffs on both the complaint and counterclaim and against both the corporation and individual defendants. However, the jury assessed damages only against the individual defendants.

The court concluded that the jury had misunderstood its earlier instructions and, over objection, ordered them to retire again to redeliberate the issues. The court further instructed the jury as to the legal entity status of a corporation to emphasize that it is a separate and distinct entity from the shareholders and that both the corporate and individual defendants may be liable for the same amount. The jury retired for a few minutes and returned with a verdict against all the defendants and changed the damage award assessed against the corporate defendant from zero to the full amount of the damages, equal to that assessed against the individual defendants.

Upon a review of these facts, we find that the court did not abuse its discretion by resubmitting the case to the jury after its initial verdict. It is obvious from the jury's first question that the corporation's status as a

separate legal entity was not clear. This confusion was more apparent when the jury found against the corporate defendant but only assessed damages against the individual defendants. Clearly, the jury intended to find against all the defendants but did not want plaintiffs to recover more than the full amount of their damage award. Wherefore, we find that the trial court did not err by resubmitting the case to the jury for further deliberations.

Accordingly, appellants' third assignment of error is found not well taken.

Having found that substantial justice has not been done the party complaining, the judgment of the Lucas County Court of Common Pleas is reversed with respect to the award of $300 per month for living expenses after Mr. De Boer's employment was terminated. In all other respects, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellants are hereby ordered to pay the court costs incurred in connection with this appeal.

*Judgment reversed in part*
*and affirmed in part.*

CONNORS and ABOOD, JJ., concur.